Approved: _____
          Christopher D. Brumwell
          Assistant United States Attorney

Before:  HONORABLE PAUL E. DAVISON
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        :    **SEALED COMPLAINT**
                                :
         - v. -                  :    Violations of
                                :    18 U.S.C. §§ 641 & 2
ROBERT GRIESER,                 :
                                :    COUNTY OF OFFENSE:
         Defendant.             :    ORANGE
                                :                 19mg375
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

PETER GUERRIERE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

COUNT ONE
(Theft of Government Funds)

1. From at least in or about 2012 up to and including in or about September 2018, in the Southern District of New York and elsewhere, ROBERT GRIESER, the defendant, did embezzle, steal, purloin, and knowingly convert to his use and the use of another, and without authority, did sell, convey, and dispose of records, vouchers, money and things of value of the United States, and a department and agency thereof, to wit, the West Point Military Academy ("West Point"), which exceeded the sum of $1,000, and did receive, conceal, and retain the same with intent to convert it to his own gain, knowing it to have been embezzled, stolen, purloined and converted, to wit, GRIESER stole funds from West Point by submitting fraudulent funding requests for West Point's fencing team and subsequently causing the funds to be transferred to GRIESER's personal bank account.

(Title 18, United States Code, Sections 641 and 2.)

1

The bases for my knowledge and for the foregoing charges are, in part, as follows:

2. I am currently employed as a Special Agent with FBI, and have participated in the investigation of this case. This affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Fraudulent Scheme

3. Based on my conversations with West Point personnel, I know that ROBERT GRIESER, the defendant, served as the head fencing coach at West Point beginning in at least 2012 until approximately September 2018.[1] Beginning in approximately 2012, GRIESER also served as the Treasurer of a non-profit fencing organization called the United States Association of Collegiate Fencing Clubs ("USACFC").

4. As described further below, ROBERT GRIESER, the defendant, used his dual role as West Point's head fencing coach and the Treasurer of USACFC to perpetrate a scheme to defraud West Point of approximately $170,000. Specifically, GRIESER submitted funding requests asking West Point to issue checks to USACFC, purportedly to cover entry fees for fencing events or related costs. Rather than using the money for West Point's fencing team, however, GRIESER had USACFC transfer the funds to his personal bank account for his own personal use.

### USACFC's Annual Fencing Tournament

5. As USACFC explains on its website, USACFC was established to promote fencing at the collegiate level throughout the United States.

6. As its website also explains, USACFC hosts an annual national fencing championship, which takes place over the

---

[1] Based on my training, experience, and participation in this investigation, I know that West Point is a military academy operated by the United States, and that West Point is therefore an agency of the United States within the meaning of 18 U.S.C. § 641.

2

course of one weekend. To participate in the championship, college fencing teams must pay USACFC yearly membership dues as well as an entry fee. Based on my conversations with USACFC's staff and members of West Point's fencing team, I know that the combined yearly dues and tournament entry fee has been less than approximately $1,000 since at least 2012. Additionally, documents I reviewed from USACFC's website state that the combined tournament entry fee and yearly dues for 2017 were approximately $650, and the combined tournament entry fee and yearly dues for 2018 were approximately $850.

7. In the course of my investigation of this case, I have reviewed an analysis of USACFC's bank records prepared by another member of law enforcement (the "Analyst"). Based on my review of that analysis, I know that universities other than West Point that participate in USACFC's annual tournament paid USACFC less than approximately $1,000 each year. In particular, other than West Point, the four universities that paid USACFC the largest sums of money from 2012 to 2018 paid approximately the following:

  a. University-1 paid a total of $5,145 from 2012 – 2018;

  b. University-2 paid a total of $4,875 from 2012 – 2018;

  c. University-3 paid $4,875 from 2012 – 2018;

  d. University-4 paid $4,875 from 2012 – 2018.

8. During the course of my investigation, I interviewed a director of USACFC (the "Director"). The Director explained to me that USACFC's board members, including its Treasurer, are volunteers who do not receive monetary compensation. The Director also informed me that USACFC's total annual operating budget is less than approximately $40,000.

### Robert Grieser's Fraudulent Funding Requests

9. In contrast to the modest sums of money USACFC received from other universities, based on my review of the analysis of USACFC's bank records referenced in paragraph 7 above, I know that West Point paid USACFC approximately $175,803.50 from 2012 - 2018. This amount is thirty-four times more than the amount any other university paid to USACFC from 2012 – 2018.

10. During my conversation with the Director of USACFC, I showed the Director a West Point invoice stating that West Point paid USACFC approximately $33,000 in its 2016 fiscal year. In response, the Director stated, in substance and in part, that he knew of no reason why West Point should have paid USACFC that amount of money, and described the sum as "totally outrageous."

11. Based on my review of documents maintained by West Point and my conversations with an employee of West Point in charge of funding disbursements, I know that West Point's practice was to make payments to USACFC pursuant to funding request forms submitted by ROBERT GRIESER, the defendant. These forms requested West Point to issue checks to USACFC purportedly to cover fencing-related costs, such as entry fees for tournaments and qualifying events. Since, as set forth above, I know that USACFC held only one tournament each year and the total cost of participating was less than $1,000, based on my training, experience, and participation in this investigation, I believe that any requests for payments to USACFC submitted by GRIESER in excess of the modest yearly dues and entry fees were fraudulent.

12. As an example of the fraudulent funding requests described above, based on my review of documents maintained by West Point, I know that from May 2018 through August 2018, ROBERT GRIESER, the defendant, submitted the following requests, among others, to West Point for payments to USACFC:

- a. A $2,250 request, dated May 1, 2018, for "Entry Fees for Cadets for Summer Nationals Qualifiers," and listing the dates 6/2-3, 6/9-10, and 6/16-17.

- b. A $2,475 request, dated May 12, 2018, for "Entry Fees for Cadets for Summer National Championships," and listing the dates 7/3, 7/4, and 7/5.

- c. A $4,950 request, dated May 11, 2018, for "Entry Fees for Cadets for Summer National Championships," and listing the dates 6/27, 6/28, 6/29, 6/30, 7/1, and 7/2.

- d. A $2,250 request, dated June 10, 2018, for "Entry Fees for Cadets for World Cup Qualifiers," and listing the dates 6/23-6/24, 7/7-7/8, and 7/14-15.

4

      e. A $2,250 request, dated June 28, 2018, for "Entry Fees for Cadets for World Cup Qualifiers," and listing the dates 7/21-22, 7/28-29, and 8/4-5.

      f. A $2,250 request, dated July 7, 2018, for "Entry Fees for Cadets for World Cup Qualifiers," and listing the dates 8/11-12, 8/18-19, and 8/25-26.

      g. A $2,250 request, dated July 24, 2018, for "Entry Fees for Cadets for World Cup Qualifiers and National Qualifiers for Conference Standing," and listing the dates 9/1-2, 9/8-9, and 9/15-16.

      h. A $3,708.50 request, dated August 3, 2018, for "Mid Atlantic Fencing Championship in Knoxville, TN from 20-21 OCT 18: Fee Includes Entries for Both Days for All Cadets, plus meals at venue."

      i. A $2,325 request, dated August 15, 2018, for "Entry Fees for Cadets for Team Relays in the Mid Atlantic Region."

      13. These funding requests relate to several different fencing events and total approximately $24,500, an amount that is well in excess of the yearly dues West Point owed to participate in USACFC's single tournament. Based on my training, experience, and participation in this investigation, I believe that the requests are fraudulent for that reason alone. Moreover, based on my investigation, I believe that West Point's fencing team did not participate in any tournaments from May 2018 to August 2018, the period covered by the requests listed above in paragraph 12. In particular, I and another member of law enforcement interviewed a West Point cadet (the "Cadet") who was a member of West Point's fencing team from 2015 until 2018, and was the Captain of the fencing team in 2018. The Cadet informed me, in substance and in part, that in a given academic year, West Point's fencing team begins training at the end of August and stops training before the first week of May. The Cadet explained that she did not know of any West Point fencing events between May 2018 and August 2018.

      14. Therefore, I believe that ROBERT GRIESER, the defendant, submitted approximately $170,000 fraudulent funding requests to West Point from 2012 through 2018.

**Robert Grieser Transfers USACFC Funds to His Personal Account**

5

15. Based on my training and experience, and my review of USACFC's bylaws, I know that as USACFC's Treasurer, ROBERT GRIESER, the defendant, had authority to issue checks against USACFC's bank account.

16. Based on my review of an analysis of USACFC's bank records prepared by the Analyst, I know USACFC issued checks payable to ROBERT GRIESER, the defendant, shortly after checks from West Point were deposited into the account. Further, I know based on my review of records for GRIESER's personal bank account ("Grieser's Account") that, shortly after he received the checks from USACFC, GRIESER deposited the USACFC checks into his personal account. For example:

   a. On or about October 18, 2016, a check in the amount of $2,360 from West Point was deposited into USACFC's account. Two days later, on or about October 20, 2016, a check in the amount of $2,360 was written from USACFC's account to GRIESER and eventually deposited into Grieser's Account.

   b. On or about July 3, 2018 and July 17, 2018, respectively, two checks in the amount of $2,250 from West Point were deposited into USACFC's account. Then, on or about July 31, 2018, checks in the amount of $2,250 and $2,300 were written from USACFC's account to GRIESER and eventually deposited into Grieser's Account.

   c. On or about August 29, 2018, four checks in the amount $2,325, $2,250, $3,708.50, and $2,250 from West Point were deposited into USACFC's account. Then, on or about September 4, 2018, a check in the amount of $10,500 was written from USACFC's account to GRIESER and eventually deposited into Grieser's Account.

17. Since USACFC wrote checks to ROBERT GRIESER, the defendant, at times and in amounts similar to amounts paid by West Point to USACFC, I believe based on my training, experience, and participation in this investigation that GRIESER's scheme was to steal funds from West Point by submitting fraudulent funding requests on behalf of USACFC, and then to take possession of those stolen funds by abusing his signatory authority over USACFC's bank account to cause USACFC to write checks to him for funds to which he was not entitled.

18. Additionally, based on my review of records from Grieser's Account, I know that the funds transferred to him by USACFC were generally used for personal expenses, and were rarely, if ever, used for purposes related to West Point's fencing team.

19. In total, based on an analysis of USACFC's bank records prepared by the Analyst, I know that between 2012 and 2018, USACFC issued checks to ROBERT GRIESER, the defendant, in an amount over $200,000, which is well in excess of the amount that West Point paid to USACFC pursuant to GRIESER's funding requests. Based on my conversation with the Director, I know that GRIESER was not owed any compensation for serving as USACFC's Treasurer, that USACFC had no reason to authorize payments to GRIESER in excess of a few hundred dollars each year for reimbursement of fencing-related expenses, and that neither the Director nor USACFC's Board of Directors authorized paying GRIESER hundreds of thousands of dollars. Therefore, I believe that GRIESER stole the funds that West Point paid to USACFC by causing those funds to be transferred to his personal account through checks issued by USACFC.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ROBERT GRIESER, the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

PETER GUERRIERE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of October, 2019

HONORABLE PAUL E. DAVISON
United States Magistrate Judge
Southern District of New York